650 So.2d 24 (1995)
STATE of Florida, Petitioner,
v.
Roberta JACKSON, Respondent.
No. 83760.
Supreme Court of Florida.
February 9, 1995.
*25 Robert A. Butterworth, Atty. Gen., Robert J. Krauss, Sr. Asst. Atty. Gen., Chief of Crim. Law, and Davis G. Anderson, Jr. and Kimberly D. Nolen, Asst. Attys. Gen., Tampa, for petitioner.
James Marion Moorman, Public Defender, and Robert F. Moeller, Asst. Public Defender, Bartow, for respondent.
HARDING, Justice.
We have for review Jackson v. State, 636 So.2d 1372 (Fla. 2d DCA 1994), wherein the Second District Court of Appeal certified the following question as one of great public importance:
DOES INFORMATION TRANSMITTED TO A DISPLAY PAGER CONSTITUTE AN ELECTRONIC COMMUNICATION AS DEFINED BY SECTION 934.02(12), FLORIDA STATUTES (1991), SUCH THAT TO LAWFULLY INTERCEPT SUCH INFORMATION THROUGH A DUPLICATE DISPLAY PAGER, THE STATE OF FLORIDA MUST FIRST SEEK AUTHORIZATION PURSUANT TO SECTIONS 934.07 AND 934.09, FLORIDA STATUTES (1991)?
Id. at 1377.
We rephrase the question to read:
MUST THE STATE OF FLORIDA SEEK AUTHORIZATION PURSUANT TO SECTIONS 934.07 AND 934.09, FLORIDA STATUTES (1991), TO LAWFULLY INTERCEPT INFORMATION TRANSMITTED TO A DISPLAY PAGER THROUGH A DUPLICATE DISPLAY PAGER?
We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution and answer the rephrased certified question in the affirmative.
In June 1991, a Sarasota police detective petitioned the circuit court for an order authorizing the duplication of Jackson's pager. The judge granted the ex parte application and issued an order directing GTE Communications Carrier to cooperate with law enforcement officers in acquiring a duplicate pager and intercepting telephone numbers called into Jackson's pager for thirty days. In July 1991, another detective repeated the application process before a different circuit judge and obtained a duplicate order. To obtain the court orders, detectives followed the procedures for application and issuance of an order for a pen register or a trap-and-trace device.[1]See §§ 934.32, .33, Fla. Stat. (1991).
The detectives monitored the numbers called into Jackson's display pager and determined *26 that the numbers included a two- or three-digit code that identified the caller, the caller's telephone number, and the amount of drugs the caller wanted to purchase from Jackson. After intercepting a series of digitized transmissions, the detectives verified this information with visual surveillance of Jackson in her car. 636 So.2d at 1373.
Based on the information intercepted through the duplicate display pager, police obtained a search warrant for Jackson's car in August 1991. The detectives searched the car, discovered cocaine, and arrested Jackson. Jackson was prosecuted for trafficking in cocaine. She moved to suppress the evidence and, after the trial court denied her motion, entered a plea of nolo contendere, specifically reserving her right to appeal.
Jackson appealed her judgment and 4 1/2-year prison sentence for trafficking in cocaine, arguing that the trial court erred in denying her motion to suppress because the search warrant was based on illegally intercepted communications. Without this tainted information, she argued, the facts relied on to establish probable cause were otherwise stale. Jackson also argued that the information transmitted to a display pager constitutes an electronic communication as defined by section 934.02(12), Florida Statutes (1991). She contended that anyone who wanted to intercept such communications must follow the wiretap procedures set forth in sections 934.07 and 934.09, Florida Statutes (1991). The wiretap procedures are more stringent than those the police followed in this case.
The Second District Court of Appeal agreed with Jackson and held that the information intercepted by the duplicate display pager constituted interception of a protected electronic communication under the wiretap statute. Jackson, 636 So.2d at 1376. The court held that the State's failure to comply with wiretap procedures precluded the use of this information in the search warrant application. Id. at 1377. Finding the remaining facts insufficient to support the search warrant application, the district court reversed Jackson's judgment and sentence and remanded to the trial court with directions to grant Jackson's motion to suppress. Id. The court also certified the question to this Court.
This is an issue of first impression for this Court. The State urges us to hold that a duplicate digital display pager is similar to a pen register, and, therefore, not governed by the statutory requirements for a wiretap order. In the instant case, police followed the procedure for securing a pen register or a trap-and-trace device. See §§ 934.32, .33, Fla. Stat. (1991). The State concedes that if this Court holds that the interception of a duplicate display pager is governed by the wiretap procedures, it did not comply with those requirements in this case. Jackson, 636 So.2d at 1373, 1377.
Jackson argues, as she did in the court below, that the numbers dialed into her pager are electronic communications and wiretap procedures govern the interception of these numbers. Sections 934.07 and 934.09 set out a stringent procedure that applicants must follow to intercept wire, oral, or electronic communications. The difficulty with Jackson's argument is that the statutory definition of "electronic communication" does not include communication made through a display pager such as the one used in this case.[2]
Chapter 934 protects against the unauthorized interception of oral, wire, or electronic communications. Because the interception of these communications is a statutory exception to the federal and state constitutional right to privacy, In re Grand Jury Investigation, 287 So.2d 43 (Fla. 1973), these statutes must be strictly construed and narrowly limited *27 in their application according to the statutory language.
Until 1988, chapter 934 regulated only wire and oral communications. The Florida legislature substantially revised chapter 934 in 1988 to conform with the federal provisions regarding the interception of wire, oral, or electronic communications.[3] The legislature added electronic communications to chapter 934. As amended in 1988, the statute allows the interception of wire, oral, or electronic communications only when a law enforcement agency follows the wiretap procedures in section 934.09. An order authorizing the interception of wire, oral, or electronic communication requires a judicial finding of probable cause for belief that an individual is committing, has committed, or is about to commit an offense listed in section 934.07, probable cause for belief that communications about the offense will be obtained through the interception, and a determination that normal investigative procedures have failed, or reasonably appear to be unlikely to succeed if tried or to be too dangerous. The interception then remains under the control and supervision of the authorizing court. Tone-only paging devices are specifically excluded from the coverage of both the Florida and federal statutes. See § 934.02(12)(c), Fla. Stat. (1991); 18 U.S.C. § 2510(12)(c) (1988).
The plain language of section 934.09 does not indicate whether it applies to any other type of pager transmission. Where the language of a statute is not clear, we may look to the legislative history for guidance. Department of Legal Affairs v. Sanford-Orlando Kennel Club, 434 So.2d 879, 882 (Fla. 1983). We must honor the obvious legislative intent and policy behind an enactment, even where the intent requires an interpretation that exceeds the literal language of the statute. Byrd v. Richardson-Greenshields Sec., Inc., 552 So.2d 1099, 1102 (Fla. 1989).
The legislative history of the 1988 revisions to chapter 934 indicates that the Florida Legislature intended to require a wiretap order when intercepting any pager transmission, except a tone-only pager.[4] The committee staff analysis of the bill amending chapter 934 says:
With the inclusion of electronic communications in Chapter 934, the following forms of communications, which are currently excluded from the chapter's protections against unauthorized interception, would continue to be excluded: ... communications through "tone-only" beepers (in contrast with voice pagers, which would be oral communications, and digital readout pagers, which would be wire communications)....
Staff of Fla. S. Comm. on Judiciary-Crim., CS for SB 585 (1988) Staff Analysis 2 (May 16, 1988) (available at Fla. Dep't of State, Div. of Archives, ser. 18, carton 1728, Tallahassee, Fla.) (emphasis added).
Because chapter 934 is modeled after a federal statute, we also may look to the federal legislative history as a guide to determine whether monitoring digital display pagers is governed by wiretap provisions. This is because a long-standing rule of statutory construction in Florida recognizes that if a state law is patterned after a federal law on the same subject, the Florida law will be accorded the same construction as given to the federal act in the federal courts. Gay v. Inter-County Tel. & Tel. Co., 60 So.2d 22 (Fla. 1952); O'Loughlin v. Pinchback, 579 So.2d 788, 791 (Fla. 1st DCA 1991) (statutory construction should be the same to the extent the construction is harmonious with the spirit of the Florida legislation).
The federal statute defines an electronic communication as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that *28 affects interstate or foreign commerce." 18 U.S.C. § 2510 (12) (1988). The legislative history indicates that the Senate Judiciary Committee specifically referred to electronic pagers and made clear that display pagers are included within the federal act's coverage:
Radio communications transmitted over a system provided by a common carrier are not readily accessible to the general public with one exception. That exception is for tone-only paging systems. As a result of that exception, the interception of tone-only paging system transmissions will not be prohibited by this law. However, the unauthorized interception of a display paging system, which involves the transmission of alphanumeric characters over the radio, carried by a common carrier, is illegal.

S.Rep. No. 541, 99th Cong., 2d Sess. 10 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3569 (emphasis added). This history indicates that Congress intended display pagers to be considered electronic communications[5] and Florida's legislative history indicates that such pagers are wire communications. When the legislative histories are read together, the conclusion is inescapable that the monitoring of digital display pagers is governed by the wiretap provisions  regardless of whether the pager transmission is considered wire, oral, or electronic communication.
We therefore reject the State's argument that the pen register and trap-and-trace device procedure applies. These devices are attached to a telephone line to reveal only numbers dialed to or from that line. The caller has no control over what numbers are recorded on the pen register or the trap-and-trace device. In contrast, a pager such as the one Jackson used reveals numbers dialed by the caller. Because the caller decides which numbers to enter, the caller could dial in the telephone number of the telephone line from which the call is made or could dial another telephone number altogether. The callers in this case also dialed substantive information, including an identifying code and a quantity of drugs they wanted to purchase. Thus, because the interception of a pager may disclose telephone numbers and coded messages as dialed by the caller, monitoring a pager with a duplicate digital display pager is more intrusive than using a pen register or a trap-and-trace device. We therefore hold that any communication via a pager other than a tone-only pager requires a wiretap order under sections 934.07 and 934.09.
We recognize that we held in Dorsey v. State, 402 So.2d 1178, 1180 (Fla. 1981), that there can be no expectation of privacy in beeper messages sent over the airwaves and that such messages are not protected by Florida's wiretap law. In Dorsey, the police intercepted beeper messages by means of a radio scanner without a warrant. Emphasizing the broadcast nature of beeper messages and reasoning that wire communications are those actually transmitted by wire, we rejected the argument that such messages constituted wire communications under section 934.02(1). We distinguish Dorsey because the Florida legislature has since amended the law so that transmissions to digital readout pagers constitute wire communications. Thus we conclude that pager transmissions constitute wire (digital readout pagers), oral (voice pagers), or electronic (all other types pagers except tone-only paging devices) communications. Strict construction of the statute requires that interception of these transmissions be made under the stringent procedures set forth in sections 934.07 and 934.09, Florida Statutes (1991).
Accordingly, we answer the rephrased certified question in the affirmative. Although we do not agree with the district court's *29 conclusion that information transmitted to a duplicate display pager constitutes an electronic communication, we find that the information is a communication subject to the wiretap procedures in sections 934.07 and 934.09. We approve the decision below reversing Jackson's judgment and sentence and remanding to the trial court with directions to grant her motion to suppress.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] A pen register is a device that records or decodes electronic or other impulses that identify the numbers dialed or transmitted on the telephone line to which the device is attached. § 934.02(20), Fla. Stat. (1991). A trap-and-trace device captures the incoming electronic or other impulses that identify the originating number of an instrument or a device from which a wire or electronic communication was transmitted. § 934.02(21), Fla. Stat. (1991).
[2] Section 934.02(12), Florida Statutes (1991), defines "electronic communication" as

any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects intrastate, interstate, or foreign commerce, but does not include:
(a) The radio portion of a cordless telephone communication that is transmitted between the cordless telephone handset and the base unit;
(b) Any wire or oral communication;
(c) Any communication made through a tone-only paging device; or
(d) Any communication from an electronic or mechanical device which permits the tracking of the movement of a person or an object.
[3] Wire and Electronic Communications Interception and Interception of Oral Communications, 18 U.S.C. §§ 2510-2521 (1988).
[4] The federal legislative history describes a "tone only" paging device as one that emits a "beep" or other signal to inform the user that a message is waiting, and where that message can be retrieved by the user's making a phone call to a predetermined number (usually an office or an answering service). S.Rep. No. 541, 99th Cong., 2d Sess. 10 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3564.
[5] The few federal courts that have considered this issue under the federal statute have held that digital display paging device messages constitute electronic communications. United States v. David, 940 F.2d 722 (1st Cir.1991) (government must apply for an electronic surveillance order when seeking issuance of a beeper clone), cert. denied, ___ U.S. ___, 112 S.Ct. 2301, 119 L.Ed.2d 224 (1992); United States v. Paredes-Moya, 722 F. Supp. 1402 (N.D.Tex. 1989) (government must apply for a wiretap order when seeking permission to intercept electronic communications received by a digital display paging device), aff'd in part and rev'd in part on other grounds, United States v. Guerra-Marez, 928 F.2d 665 (5th Cir.1991), cert. denied, 502 U.S. 969, 112 S.Ct. 443, 116 L.Ed.2d 461 (1991).