SHARP, W., J.
Sterling Casino Lines appeals from a final judgment in favor of Leslie Plowman-Render in a personal injury action. Plowman-Render sued Sterling claiming she suffered a shoulder injury on a Sterling gambling cruise when a waitress bumped into her. We conclude the trial court abused its discretion in admitting irrelevant evidence which impugned the character of one of Sterling’s chief witnesses, the emergency medical technician who treated Plowman-Render. Accordingly, we reverse and remand for a new trial.
On July 26, 2000, Leslie Plowman-Render was on a one-day gambling cruise on a Sterling cruise vessel. According to Plowman-Render, a waitress carrying a tray of hot coffee collided with her and caused her to be knocked into a wall. The collision resulted in an injury to her shoulder. Sterling claimed that another passenger, and not a crew member, had bumped into Plowman-Render.
At trial, Plowman-Render testified she was on the cruise ship with two friends and her boyfriend’s mother, Clara Dean. Plowman-Render and Dean walked out of *940 the restroom into an alcove and turned into the hallway. A waitress came toward Plowman-Render and hit her with a tray of coffee. Plowman-Render went down on one knee and was burned by the hot coffee.
Sterling’s emergency medical technician Dan Gardner was called to the scene. Gardner took Plowman-Render and Dean to a security office where he treated Plowman-Render with a first aid spray. Plowman-Render told Gardner that a waitress (later identified by Plowman-Render as Syreesa Jones) had run into her with coffee.
According to Plowman-Render, Jones was with them in the office but left to get her a shirt from the ship’s gift shop because hers was stained. Jones returned in a few minutes with a T-shirt in a little gift bag. The shirt was too small so Plowman-Render exchanged it for a larger one at the gift shop. Plowman-Render asked whether the waitress had purchased the shirt with her own money and the cashier said she had.
Plowman-Render returned home and her burns healed in a few days. However, two or three days later, she had a stiff neck and a sore shoulder. She went to see her primary care physician, Dr. Marsicano, and told him that she had gotten bumped. However, Dr. Marsicano’s medical records indicate the injury occurred when Plowman-Render struck her shoulder on a door a month later, in August 2000.
Plowman-Render admitted she stated in her deposition that the waitress was carrying a round tray. At trial, she testified she was not saying the tray was round, it could have been oval. Sterling’s food and beverage manager testified the ship uses rectangular, not round, trays.
Plowman-Render also admitted she asked the gift shop cashier if Jones had used her employee discount, but was not sure if the cashier answered yes or no. In her deposition, Plowman-Render stated the cashier told her Jones had used her employee discount. Sterling’s accounting manager testified the gift shop records from the day of the incident showed three T-shirts were sold that day. However, the records did not show that any employee discounts had been used that day.
Jones1 testified on Sterling’s behalf that she was working on that day but denied she had bumped into Plowman-Render. Sterling introduced the videotape from the security office which shows Gardner, Plowman-Render and Dean in the office. The tape does not show Jones in the office.
Sterling also admitted the deposition testimony of Gardner, the emergency medical technician who treated Plowman-Render. Gardner’s employment had been terminated by Sterling for reasons unrelated to this case. Sterling’s counsel located Gardner in Las Vegas several months before the trial and agreed to pay his expenses to come to Florida for a deposition.
In his deposition, Gardner said Plowman-Render told him that another passenger came into the restroom carrying a cup of coffee and bumped into her, spilling the coffee. Gardner wrote down this information in his incident report. Plowman-Render never said that a Sterling employee ran into her and never said she had been knocked to the ground.
Sterling later asked him to sign an affidavit regarding the incident. Sterling sent Gardner the videotape, photographs of Plowman-Render and his incident report, which helped him recall the incident. Gardner had no independent recollection of Plowman-Render before he received these items,
Over Sterling’s objection, Sterling was not permitted to edit out certain questions *941 and answers from Gardner’s deposition. Thus at trial, Plowman-Render was able to introduce information relating to Gardner’s alcohol-induced coma, suicide attempt, stays in a mental facility and the reason for his termination from employment with Sterling.
Gardner admitted he had been in an alcohol-induced coma about two years ago. Plowman-Render’s counsel asked why Gardner told him this coma was the result of a fall from a roof. Gardner refused to answer that question, saying it was a personal issue. Gardner refused to say whether the fall from the roof was caused by alcohol intoxication and would not say whether falling from the roof had anything to do with his coma. Gardner said he had not tried to commit suicide but would not answer whether he had ever been in a mental or psychiatric hospital. Gardner admitted he had been fired by Sterling for sexual harassment and never challenged the allegation because he had seen what other employees had gone through.
The jury found in favor of Plowman-Render and awarded her $3,597.77 for past medical and hospital expenses and $125,000 for non-economic damages. Sterling moved for a new trial arguing, among other things, that the trial court erred in admitting improper character evidence, evidence of prior bad acts and other irrelevant evidence concerning Gardner, which was unfairly prejudicial to Sterling. That motion was denied and final judgment was entered in Plowman-Render’s favor.
The admission of evidence is generally a matter within the sound discretion of the trial court. O’Brien v. O’Brien, 899 So.2d 1133 (Fla. 5th DCA 2005); LaMarr v. Lang, 796 So.2d 1208 (Fla. 5th DCA 2001). Unless an abuse of that discretion can be shown, the trial court’s rulings will not be overturned. Lumbermens Mutual Casualty Co. v. Poling, 823 So.2d 805 (Fla. 5th DCA 2002); LaMarr.
The questions Plowman-Render’s counsel asked Gardner in his deposition concerning his alcohol-induced coma, suicide attempt, stays in a mental facility and the reason for his termination from employment with Sterling may have been appropriate in a discovery context. The concept of “relevancy” is broader in discovery than at trial and a party may be permitted to discover relevant evidence that would be inadmissible at trial so long as it may lead to the discovery of admissible evidence. Davick v. Norman Brothers Nissan, Inc., 739 So.2d 138 (Fla. 5th DCA 1999), rev. denied, 760 So.2d 947 (Fla.2000).
However, these questions were irrelevant to the issues at trial and served simply to portray Gardner in an unfavorable light. Plowman-Render did not establish Gardner’s memory had been impaired by' the coma or any other medical condition. Likewise, Plowman-Render did not show any reason for delving into the specific reason for Gardner’s termination from Sterling. Gardner was attempting to protect his privacy at his deposition but his refusal to answer some questions may have seemed evasive to the jury.
The credibility of witnesses was clearly crucial in this case. Plowman-Render’s friends apparently did not see the incident and Dean has been diagnosed with Alzheimer’s and did not testify. Thus the case came down to Plowman-Render’s version of events or Gardner’s and Jones’ version, which were in direct conflict. These questions impugned Gardner’s character and may have destroyed his effectiveness as a witness.
In these circumstances, we conclude Sterling is entitled to a new trial. See Edwards v. Orkin Exterminating Co., Inc., 718 So.2d 881 (Fla. 3d DCA 1998) (plaintiff in negligence action was entitled *942 to a new trial on damages where the trial court admitted evidence that he failed to pay child support and defendant was allowed to insinuate that plaintiff, when he was in his early 20s, had a history of alcohol and drug use); Roby v. Kingsley, 492 So.2d 789 (Fla. 1st DCA 1986) (plaintiff in personal injury action was entitled to a new trial where evidence of his prior homosexual relationship was admitted at trial; evidence was irrelevant to his injuries and could have been prejudicial and even if it were relevant, it was inadmissible on the basis that its value would be substantially outweighed by the danger of unfair prejudice); Neering v. Johnson, 390 So.2d 742 (Fla. 4th DCA 1980) (in automobile accident case in which parties stipulated that defendant was liable and the sole issue at trial was plaintiffs damages, testimony that defendant appeared to be drunk at the time of the accident was irrelevant and error in admitting such testimony required reversal in view of the very high awards indicating the jury may have been influenced by such testimony). See also LaMarr (erroneous admission of evidence which proved, only defendant’s bad character or propensity for violence was not harmless in hearing on plaintiffs petition for an injunction for protection against repeat violence where trial judge specifically relied on the improper evidence and credibility of the parties was crucial).
REVERSED and REMANDED for a new trial.
PETERSON and MONACO, JJ., concur.